UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JUSTIN M. HAYES and AMANDA E. HAYES,
           Plaintiffs,

v.                                                    Case No. 18-CV-923

WISCONSIN & SOUTHERN RAILROAD, LLC,
LLOYDS,
PIEPER ELECTRIC, INC., and
ZURICH AMERICAN INSURANCE COMPANY,
           Defendants.

WISCONSIN & SOUTHERN RAILROAD, LLC,
           Third-Party Plaintiff,
v.

ZURICH AMERICAN INSURANCE COMPANY and
PIEPER ELECTRIC, INC.,
           Third-Party Defendant.

---

## DECISION AND ORDER

---

**1. Background**

An employee of Wisconsin & Southern Railroad was electrocuted while working for the railroad. He and his wife sued the railroad, and the railroad tendered the claim to Zurich American Insurance Company, one of the insurers providing coverage for the

railroad. Zurich asserted that it had no duty to defend or indemnify the railroad for the claim, and in a decision dated November 12, 2019, the court agreed. (ECF No. 89.)

Under Wisconsin law, if an insurer withdraws its defense after the trial court concludes there is no duty to defend, it still may be liable for bad faith if the court of appeals disagrees with the trial court's decision regarding coverage. *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 837, 501 N.W.2d 1, 6 (1993). Thus, to force the railroad to either accept this court's decision or have it definitively resolved on appeal, Zurich asked the court to enter judgment pursuant to Rule 54(b). (ECF No. 97.) However, Zurich's motion was filed 41 days after the court's decision. The Court of Appeals for the Seventh Circuit

> [l]ong ago … added a timeliness requirement as a hedge against dilatory Rule 54(b) motions. *Schaefer v. First Nat'l Bank of Lincolnwood*, 465 F.2d 234, 236 (7th Cir. 1972). [It] held in *Schaefer* that 'as a general rule it is an abuse of discretion for a district judge to grant a motion for a Rule 54(b) order when the motion is filed more than thirty days after the entry of the adjudication to which it relates.' *Id.*

*Hayes v. Wis. & S. R.R., LLC*, No. 18-CV-923, 2020 U.S. Dist. LEXIS 7482, at *3 (E.D. Wis. Jan. 16, 2020) (quoting *King v. Newbold*, 845 F.3d 866, 868 (7th Cir. 2017)). Thus, the court denied Zurich's motion as untimely. *Id*. at *4.

The court then denied Zurich's motion for reconsideration, again finding that Zurich failed to excuse its untimeliness because it had not shown that its "dilatoriness [was] not occasioned by neglect or carelessness." *Hayes v. Wis. & S. R.R., LLC*, No. 18-CV-923, 2020 U.S. Dist. LEXIS 71646, at *7 (E.D. Wis. Apr. 23, 2020) (quoting *Schaefer*, 465 F.2d

at 236). At oral argument on the pending motion to dismiss, counsel for Zurich confirmed that he was aware of the 30-day deadline but failed to timely move for the entry of judgment because of delays in obtaining approval from Zurich. Zurich never argued that its delay was the result of excusable neglect.

Zurich has now filed a second amended answer and counterclaim, adding a claim for unjust enrichment and seeking reimbursement for all costs it expended and may continue to expend for the railroad's defense. (ECF No. 110.) There is no allegation that the policy includes a right to reimbursement, and at oral argument the parties confirmed that the policy does not include any such provision. However, Zurich reserved a right to reimbursement in its reservation of rights. (ECF No. 110 at 17, ¶ 15.)

The railroad has moved to dismiss the unjust enrichment counterclaim. (ECF No. 112.) The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the employee's underlying claim arises under the Federal Employers' Liability Act ("FELA"), U.S.C. § 51, *et seq*. All parties have consented to the full jurisdiction of this court in accordance with 28 U.S.C. § 636(c).

2. **Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

3. **Analysis**

The question presented in the railroad's motion to dismiss is whether, under Wisconsin law, an insurer may pursue a claim for unjust enrichment to recover the costs of defense that it provided under a reservation of rights.

It is this court's obligation to apply the law as it believes the Wisconsin Supreme Court would. *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). If the Wisconsin Supreme Court has never decided a particular issue, this court considers the decisions of other Wisconsin courts as persuasive authority as to how the Wisconsin Supreme Court would decide the issue. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). In the absence of any Wisconsin authority on an issue, the court may look to other jurisdictions that have addressed the issue, but always with the aim of predicting how the Wisconsin Supreme Court would decide the issue. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

Neither the Wisconsin Supreme Court nor the Wisconsin Court of Appeals have addressed the question presented. The closest the Wisconsin Supreme Court came was in dicta in a case nearly 35 years ago when it said, "we have noted that an insurer may be required to furnish a free defense to its insured prior to the determination of coverage." *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis. 2d 496, 528-29, 385 N.W.2d 171, 186 (1986). The railroad argues that, by referring to the obligation to provide a "free defense," the court rejected the notion that a purported insured would have to reimburse an insurer for defense costs. After all, something is not free if you have to pay someone back for it.

This reading places undue weight on a two-word phrase in passing dicta. *Kreuger Int'l, Inc. v. Fed. Ins. Co.*, 647 F. Supp. 2d 1024, 1042 (E.D. Wis. 2008) ("Only by ignoring context can the Wisconsin Supreme Court's reference in *Mowry* to a 'free defense' be taken as that Court's resolution of this important issue."). The issue of reimbursement was not before the court and it would be unreasonable to assume that a flitting phrase resolved this significant and controversial question.

As to states that have addressed the question, permitting insurers to recoup defense costs for uncovered claims is regarded as the majority view. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 166, 293 Ill. Dec. 594, 606, 828 N.E.2d 1092, 1104 (2005). "Courts that recognize such claims for reimbursement of defense costs generally do so under a quasi-contract theory, allowing recovery to prevent unjust enrichment." *Gen. Star Indem. Co. v. V.I. Port Auth.*, 564 F. Supp. 2d 473, 477 (D. V.I.

2008) (discussing *Buss v. Superior Court*, 16 Cal. 4th 35, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (Cal. 1997)).

But a simple tally of the states on each side of this issue does not accurately reflect the controversy that underlies this question. The issue has even divided the American Law Institute, with the Restatement of the Law of Restitution and Unjust Enrichment favoring reimbursement, *see* Restatements of the Law 3d, Restitution and Unjust Enrichment, § 35, and the Restatement of the Law of Liability Insurance opposing it, *see* Restatement of the Law of Liability Insurance, § 21. As for treatises, Appleman favors reimbursement. 1 New Appleman Insurance Bad Faith Litigation § 2.11 (2nd 2020). Couch notes that "[a]n insurer generally seeks reimbursement of defense costs and attorneys' fees from an insured under circumstances in which the insurer has defended a claim not covered by a policy, or which was only partially covered (a 'mixed' action)" but observes that "[j]urisdictions differ widely on this issue." Overview, 16 Couch on Ins. § 226:123.

Outcomes in other cases are often heavily fact dependent, varying based on many factors, including the stage at which the insured sought reimbursement, whether the policy provided coverage for any portion of the claim *(i.e.,* "mixed" claims), *see, e.g., Buss*, 16 Cal. 4th 35, 65 Cal. Rptr. 2d 366, 939 P.2d 766, the scope of the alleged reimbursement *(e.g.,* whether the insurer was seeking reimbursement for defense costs or the payment of an uncovered claim), *see, e.g., Phillips & Assocs., P.C. v. Navigators Ins. Co.*, 764 F. Supp. 2d 1174, 1178 (D. Ariz. 2011) (discussing reimbursement of defense and settlement costs);

*Tex. Ass'n Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 134 (Tex. 2000) (discussing reimbursement of settlement costs), and the theory under which the insurer sought reimbursement, *see, e.g.*, *Matagorda Cnty.*, 52 S.W.3d at 133 (discussing reimbursement under contract and equitable theories).

Two federal judges in Wisconsin have addressed the question. In *Kreuger Int'l, Inc. v. Fed. Ins. Co.*, 647 F. Supp. 2d 1024 (E.D. Wis. 2008), concluding that an insurer's claim for reimbursement was not frivolous, Judge Griesbach permitted the insurer to file an amended pleading adding the claim. But he did not explicitly hold that such a claim was cognizable under Wisconsin law under a theory of unjust enrichment. Rather, he declined "to proceed to a final decision on this important issue at this time." Judge Griesbach explained:

> Given the questionable sufficiency of St. Paul's original counterclaim, I conclude it would be more prudent to await the filing of the amended counterclaim, allow KI to file a reply, and consider any additional argument the parties may wish to present before deciding whether St. Paul is entitled to reimbursement of its defense costs, as well as the $ 315,000 it paid S&P in settlement of the claim on appeal.

*Id.* at 1045. When the parties subsequently stipulated to dismissal, he was not required to decide the issue. *See Krueger Int'l Inc v. St Paul Fire and Marine Ins. Co.*, 07-cv-00736-WCG, ECF No. 127 (E.D. Wis.).

In a later case Judge Griesbach noted that an insurer "may be able to seek reimbursement of [defense costs] from its insured in the event no coverage is found." *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 U.S. Dist. LEXIS

4344, at *14 (E.D. Wis. Jan. 8, 2009) (citing *Kreuger Int'l*, 647 F. Supp. 2d at 1045). But this was largely a passing remark, and he again did not resolve the question.

The most definitive answer came from Judge Conley of the Western District when he rejected an insurer's attempt to seek reimbursement of costs it expended defending a claim for which it did not provide coverage. *Hanover Ins. Co. v. BMOC, Inc.*, No. 18-cv-325-wmc, 2019 U.S. Dist. LEXIS 30764, at *17-20 (W.D. Wis. Feb. 27, 2019). Three facts appear to have been significant to Judge Conley's conclusion: the insurance policy did not include a right to reimbursement; the reservation of rights did not purport to reserve a right to reimbursement; and the insurer did not ask the court to resolve the question of coverage before the underlying dispute was resolved. *Id.* at *19-20.

As to the latter two points this action is distinguishable. Zurich's reservation of rights *did* reserve a right to reimbursement, and Zurich *did* seek (and obtain) resolution of the coverage question before resolution of the underlying dispute. However, as in *Hanover*, Zurich's policy does not include a right to reimbursement, and this fact appears to have been the most significant to Judge Conley's conclusion. *See id.* at *19 n.9.

In another case Judge Conley addressed the question of reimbursement in the context of "mixed" claims—where some of the claims made against an insured are covered under the policy but others are not. Initially, Judge Conley concluded that the issue was not properly before him. *Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-cv-168-wmc, 2011 U.S. Dist. LEXIS 166542, at *11 (W.D. Wis. June 8, 2011). When the question was

presented later in the case, although discussing it at some length, Judge Conley concluded that federal jurisdiction was lacking and dismissed the action without answering the question. *Sentry Ins. v. Regal Ware, Inc.*, No. 10-cv-168-wmc, 2012 U.S. Dist. LEXIS 45277 (W.D. Wis. Mar. 30, 2012).

Zurich's claim is exclusively one of unjust enrichment. It does not argue, for example, that the railroad agreed to reimburse it for defense costs. Nor does it argue that its reservation of rights created a new contract. But, in any event, "a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy." *Matagorda Cnty.*, 52 S.W.3d at 131 (citing *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 515-16 (Wyo. 2000)); *see also Midwest Sporting Goods*, 215 Ill. 2d at 162-63, 293 Ill. Dec. at 604, 828 N.E.2d at 1102 ("As a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend."). An insurer's reservation of rights protects the rights it has under the policy rather than create new rights. *Midwest Sporting Goods*, 215 Ill. 2d at 164, 293 Ill. Dec. at 605, 828 N.E.2d at 1103 (quoting *First Ins. Co. v. State*, 66 Haw. 413, 422, 665 P.2d 648, 654 (1983)).

Under Wisconsin law, "[u]njust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant

under circumstances making it inequitable to do so." *Sands v. Menard*, 2017 WI 110, ¶30, 379 Wis. 2d 1, 18, 904 N.W.2d 789, 798.

However, "[t]he doctrine of unjust enrichment does not apply where the parties have entered into a contract." *Cont'l Cas. Co. v. Wis. Patients Comp. Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584, 587 (Ct. App. 1991) (citing *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303, 313 (1987)); *see also Beer Capitol Distrib. v. Guinness Bass Imp. Co.*, 290 F.3d 877, 881 (7th Cir. 2002). An insurance policy is a contract. *Sec. Health Plan of Wis. Inc. v. Am. Standard Ins. Co. of Wis.*, 2018 WI App 68, ¶34, 384 Wis. 2d 545, 562, 920 N.W.2d 340, 348. It is undisputed that Zurich's policy does not call for the insured to reimburse defense costs in the event no coverage is found for the claim. Thus, just as an insured generally cannot rely on equitable doctrines to expand the scope of coverage, *see, e.g.*, *Int'l Chiropractors Ins. Co. v. Gonstead*, 71 Wis. 2d 524, 528, 238 N.W.2d 725, 728 (1976), an insurer cannot, by way of a claim of unjust enrichment, expand the scope of its rights under the policy to include a right to reimbursement of uncovered defense costs. *See, e.g. US Fid. v. US Sports Specialty*, 2012 UT 3, ¶ 11, 270 P.3d 464, 468; *Excess Underwriters at Lloyd's v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 50 (Tex. 2008) (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)).

If an insurer wishes to obtain reimbursement of costs expended defending uncovered claims, then it must include such a provision in the policy. As the drafter of the policies and with insureds generally without negotiating power, that is hardly a

burdensome expectation of insurers. Zurich having failed to include a right of reimbursement in the insurance contract, it cannot turn to a claim of unjust enrichment to expand its rights under the contract. Consequently, the railroad's motion to dismiss count two of Zurich's amended counterclaim (*see* ECF No. 110 at 25, ¶¶ 47-54) must be granted.

Even if the court were to look past the principle that quasi-contractual remedies are unavailable in light of the contract between the parties, or find that an exception to this general rule applies, the court would nonetheless conclude that Zurich has failed to state a claim. It is not unjust for the railroad to accept the benefit of a Zurich-paid defense under the circumstances.

Wisconsin law creates significant incentives for an insurer to defend claims for which coverage is uncertain. If an insurer wrongfully fails to defend a claim it may be liable for all damages that result from its breach (regardless of policy limits), *Newhouse*, 176 Wis. 2d at 838, 501 N.W.2d at 7, the insured's attorney fees incurred in the coverage dispute, *Steadfast Ins. Co. v. Greenwich Ins. Co.*, 2019 WI 6, ¶46, 385 Wis. 2d 213, 237, 922 N.W.2d 71, 83 (citing *Elliott v. Donahue*, 169 Wis. 2d 310, 324-25, 485 N.W.2d 403 (1992)), and, in conjunction with a claim of bad faith, punitive damages, *Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co.*, 2016 WI 54, ¶29, 369 Wis. 2d 607, 633, 881 N.W.2d 285, 297. But this risk does not require an insurer to defend against all claims made against its insured. Zurich's decision to defend this matter is merely a cost-benefit determination based on

its own interests in light of the consequences should its belief (as well as that of this court) as to coverage prove wrong. While the provision of a defense benefits the insured, it is not benevolence or mistake but self-interest that ultimately motivates an insurer's decision to provide a defense when coverage is questionable.

Thus, an insurer paying the costs to defend a claim it believes uncovered is not merely an accidental overpayment under a contract for which unjust enrichment may be available in certain circumstances. *Cf. Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 469 (Tex. 1998). Rather, requiring an insured to pay the costs of defense in such circumstances would be to require the insured to pay the insurer for the insurer's expenses in protecting its own interests. *See Midwest Sporting Goods Co.*, 215 Ill. 2d at 163, 293 Ill. Dec. at 605, 828 N.E.2d at 1103 (quoting *Terra Nova Ins. Co. v. 900 Bar*, 887 F.2d 1213, 1220 (3d Cir. 1989)).

Moreover, it is entirely foreseeable to an insurer that it may find itself defending claims that it believes are not covered by the policies it issues. It is able to account for those risks by building them into its premiums and thus is in a far better position than the insured to allocate those costs. The fact that Zurich did not include a reimbursement provision is telling as to its expectations under the policy and its bargained-for risks.

The California Supreme Court expressed the view that allowing reimbursement protects the insured lest the cost of defense would lead insurers to refuse to defend claims for which coverage was questionable. *Buss*, 16 Cal. 4th at 52-53, 65 Cal. Rptr. 2d at 378,

939 P.2d at 778. However, the absence of a reimbursement cause of action does not seem to have dissuaded insurers from defending questionable claims in Wisconsin. Moreover, allowing reimbursement could perversely incentivize coverage disputes in that an insurer would now have a greater upside should the claim be found outside the scope of the policy. Not only will the insurer avoid further defense costs and any indemnification obligation, but it will also recover what it already expended in defending the action.

Prompt resolution of coverage disputes benefits all those affected by the litigation. Holding that an insurer could recover defense costs would remove one incentive for insurers to seek an early determination of coverage disputes. *See Matagorda Cnty.*, 52 S.W.3d at 135. Granted, the early resolution of the coverage question has not resolved Zurich's concerns here, but that is only because Zurich failed to timely seek entry of final judgment following this court's decision. The fact that Zurich continues to pay the railroad's defense costs is due to the confluence of three uncommon facts: Wisconsin law holding that, notwithstanding a trial court's decision that there was no coverage, an insurer may be liable for bad faith if that decision is reversed on appeal; the Seventh Circuit's 30-day deadline for seeking judgment under Rule 54(b); and Zurich's dilatoriness in seeking judgment.

For the railroad to continue to enjoy the benefit of Zurich paying its defense costs after the court has held that there is no coverage is arguably significantly more inequitable. But Zurich does not argue for any differentiation between defense costs

expended before and after the court's coverage determination. Notwithstanding the fact that Zurich added its claim for unjust enrichment only after the court's denial of Zurich's motion for the entry of judgment, counsel for Zurich made clear that it was seeking reimbursement for defense costs expended both before and after the court's coverage decision. In any event, Zurich is not, and has never been, *required* to continue to pay the railroad's defense. If it chooses to do so it is only because it has determined that doing so is in its best interest. It is not inequitable for the railroad to retain the benefit of a "free" defense under such circumstances.

Accordingly, the court concludes that, if presented with the question, the Wisconsin Supreme Court would likely hold that under Wisconsin law an insurer may not, by way of a claim of unjust enrichment, seek to recover from its insured the costs it expended defending a claim for which the insurance policy did not provide coverage. Consequently,

**IT IS THEREFORE ORDERED** that Wisconsin and Southern Railroad, LLC's motion to dismiss (ECF No. 112) Zurich American Insurance Company's amended counterclaim for "unjust enrichment and reimbursement" (ECF No. 110 at 25, ¶¶ 47-54) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 20th day of January, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge