# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JUSTIN M. HAYES, et al.,

        Plaintiffs,

v.                                Case No. 18-CV-923

WISCONSIN & SOUTHERN RAILROAD LLC, et al.,

        Defendants.

---

WISCONSIN & SOUTHERN RAILROAD, LLC,

        Third-Party Plaintiff,

v.

PIEPER ELECTRIC, INC.

        Third-Party Defendant.

## DECISION AND ORDER

### 1. Background

Justin M. Hayes, an employee of Wisconsin & Southern Railroad, LLC, was electrocuted while working as a welder at the railroad's shop in Horicon, Wisconsin. *Hayes v. S. R.R., LLC*, No. 18-CV-923, 2019 U.S. Dist. LEXIS 199533, at *2 (E.D. Wis. Nov.

18, 2019). The railroad admitted that any injuries Hayes suffered as a result were caused by the negligence of the railroad's electrical contractor, Pieper Electric, Inc. *Id.* at *3. Based on that admission, the court concluded that the railroad was liable for Hayes's injuries because Pieper was the railroad's agent under the Federal Employers Liability Act (FELA). *Id.* at *5.

The railroad, however, by way of a third-party complaint, seeks indemnification from Pieper. (ECF No. 24.) Pieper has moved for summary judgment on counts two (contractual indemnity (ECF No. 24, ¶¶ 41-46)), three (equitable indemnity (ECF No. 24, ¶¶ 48-52)), and four (breach of contract (ECF No. 24, ¶¶ 53-59)) of the railroad's third-party complaint. (ECF No. 126.)

In 2013 Pieper and the railroad entered into a Master Services Agreement that contained an indemnity provision. (ECF No. 137, ¶ 6.) That indemnification provision is the basis of the railroad's contractual indemnification and breach of contract claims. Pieper, however, argues that the indemnification provision does not apply because the Master Services Agreement was not in effect at the time of the alleged negligence.

The Master Services Agreement states that it will "will automatically terminate without notice one year after the termination of the last purchase order." (ECF No. 137, ¶ 4.) Although "Purchase Order" and "purchase order" are used throughout the Master Services Agreement, never is "Purchase Order" defined. (ECF No. 137-1.) The Master Service Agreement contains an "Exhibit A," which has the heading "Purchase Order

2

_____" and a footer that includes "Purchase Order Form," but the page is substantially blank. (ECF No. 137-1 at 52.) The text of the Master Services Agreement does not refer to an "Exhibit A."

The railroad did sometimes issue written purchase orders for services from Pieper. (ECF Nos. 128-2; 128-3.) But it is undisputed that, after the parties entered into the Master Services Agreement in 2013, there was a gap of more than a year between when Pieper completed work on a February 2015 purchase order and when the railroad issued a subsequent written purchase order to Pieper. (ECF No. 137, ¶¶ 10-11.) Thus, Pieper contends that the Master Service Agreement terminated and was not in effect when Pieper performed work on October 16, 2016, February 15, 2017, and February 9, 2018—the dates the railroad alleges Pieper was negligent (ECF No. 24, ¶¶ 17, 18, 19).

Although there was a long gap between written purchase orders, Pieper did not stop performing electrical work for the railroad during this period. Rather than relying on purchase orders, the railroad would generally call Pieper, request services, and Pieper would send the railroad an invoice when the service was completed. According to the railroad, an oral request for services can constitute a purchase order, at least under Kansas law, which applies pursuant to a choice of law provision (ECF No. 142-4, ¶ 5) in the Master Services Agreement.

## 2. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## 3. Analysis

The Master Services Agreement's termination provision states in relevant part: "This Master Services Agreement will automatically terminate without notice one year after the termination of the last Purchase Order." (ECF No. 137-1 at 47, § 6.1.) Pieper asserts that under this provision, if it completes work on a purchase order and more than one year passes without the railroad issuing a new purchase order, the Master Service Agreement terminates. The railroad does not dispute this reading of the

4

termination provision. Rather, it argues that its oral requests for services constituted purchase orders, that Pieper is estopped from arguing that the Master Services Agreement terminated, that there existed an implied-in-fact contract with the same terms as the Master Services Agreement, or the defense and indemnity provisions survive the termination of the Master Services Agreement.

A "purchase order" is commonly defined as "[a] document authorizing a seller to deliver goods with payment to be made later." Black's Law Dictionary (11th ed. 2019). To argue that a purchase order may be oral, the railroad relies on a passing statement in a nearly 40-year-old case from the Tenth Circuit Court of Appeals (applying Kansas law), where it said, "Brown apparently entered the purchase orders personally or by telephone." *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 763 (10th Cir. 1983). This is the only instance where the term "purchase order" was used in the decision, and whether the telephone order was a "purchase order" was not an issue in the case.

This dictum is insufficient to upset the well-established black letter definition of a "purchase order" as being a document. Moreover, the notion of an oral purchase order would be inconsistent with the requirement under the Master Service Agreement that a purchase order "will be effective only when signed and delivered by authorized representatives of Company and Contractor and will become effective as of the later of the parties' signature dates on the Purchase Order." (ECF No. 137-1 at 46, § 2.1.) Thus, the railroad has failed to demonstrate that under the Master Services Agreement or

Kansas law the term "purchase order" includes an oral request for the performance of services.

There is no dispute that the railroad did not issue a purchase order to Pieper during the period between May 2015 (the date work was completed on a purchase order issued on February 25, 2015) and September 2017. Therefore, the Master Services Agreement terminated according to its own terms no later than May 16, 2016 and was not in effect at the time Pieper performed the work that the railroad alleges in its complaint was negligent.

Notwithstanding the termination of the Master Services Agreement no later than May 16, 2016, the railroad nonetheless argues that Pieper is bound by the agreement's indemnity provisions. In the railroad's view, if the agreement had terminated, then pursuant to section 6.3 of the agreement, which states that a contractor shall "cease the terminated Services upon the effective date of the termination" (ECF No. 137-1 at 47, § 6.3), Pieper was barred from doing any further work for the railroad. Because Pieper continued to do work for the railroad, either the agreement remained in effect or Pieper should be estopped from arguing that the agreement terminated.

At most, section 6.3 required Pieper to cease work on any incomplete purchase order upon the termination of the agreement. It did not preclude Pieper from accepting subsequent work outside the Master Service Agreement. The railroad has not presented

any authority establishing that Pieper may be regarded as having renewed the Master Service Agreement simply by accepting additional work.

Nor is the fact that Pieper continued to do work for the railroad inconsistent with the termination of the Master Services Agreement. Its subsequent work was simply outside the agreement. Such an arrangement is hardly unusual. Customers routinely contact a contractor, orally request services, and then receive a bill when those services are completed. The request for and provision of services may be sufficient to create an independent contract, but such an independent agreement does not incorporate all the provisions of the terminated Master Service Agreement.

The railroad also argues that, by continuing to perform services for it, Pieper induced the railroad into believing that the Master Services Agreement remained in effect. Therefore, Pieper is estopped from arguing that the agreement terminated. (ECF No. 138 at 10.) In support, the railroad points to *Steckline Communs., Inc. v. Journal Broad. Grp. of Kan., Inc.*, 305 Kan. 761, 388 P.3d 84 (2017). But *Steckline* is distinguishable, and as discussed above, the premise of the railroad's argument—that Pieper accepting new work from the railroad was inconsistent with the termination of the Master Services Agreement—is wrong.

> When a party asserts equitable estoppel, this party bears the burden to establish "that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon

such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts."

*Steckline*, 305 Kan. at 770, 388 P.3d at 91-92 (quoting *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 927, 157 P.3d 1109 (2007)). "The policy underlying equitable estoppel is that 'it would be unconscionable to allow a person to maintain a position inconsistent with one in which he or she accepted a benefit.'" *Id.*, 388 P.3d at 92 (quoting 28 Am. Jur. 2d, Estoppel and Waiver § 60).

*Steckline* dealt with the question of whether an assignee of a contract could pursue a breach of contract claim against the defendant when the defendant had not, as the contract required, provided written consent to the assignment. The court held that factual disputes precluded judgment in the defendant's favor. Specifically, the plaintiff had adequately alleged that, by remaining silent, the defendant led the plaintiff to believe it had consented to the assignment, and thus should be estopped from objecting years later. *Steckline*, 305 Kan. at 771, 388 P.3d at 92.

Significant in *Steckline* was the fact that the assignee plaintiff explicitly alleged that the estopped defendant knew of the assignment yet remained silent. Here, to the contrary, the railroad emphasizes in its response that it was not until this litigation that Pieper recognized that the Master Service Agreement had terminated. (ECF No. 138 at 11.) Pieper cannot be said to have had an obligation to speak when it was ignorant.

The railroad's estoppel argument also fails because, as discussed above, Pieper was not required to stop performing new work for the railroad after the termination of

8

the Master Services Agreement. That Pieper would continue to perform new work on a time and materials basis is not inconsistent with the termination of the agreement.

The railroad also argues that summary judgment is inappropriate because Pieper is obligated to indemnify it for any negligence that occurred during the period when the Master Services Agreement was in effect. (ECF No. 138 at 13.) However, the railroad's third-party complaint does not allege that Pieper was negligent with respect to any work it performed prior to the termination of the agreement. The complaint refers to services Pieper performed only on October 16, 2016 (ECF No. 24, ¶ 17), February 15, 2017 (ECF No. 24, ¶ 18), and February 9, 2018 (ECF No. 24, ¶ 19), all of which were well after the agreement terminated.

Pieper also moved for summary judgment on the railroad's equitable indemnity claim (ECF No. 24, ¶¶ 48-52). (ECF No. 126.) The parties discuss this aspect of Pieper's motion only in footnotes, which is never a good way to present arguments, *see Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009); *United States ex rel. Kroening v. Forest Pharm., Inc.*, 155 F. Supp. 3d 882, 897 (E.D. Wis. 2016)).

The railroad argues that summary judgment on this claim is not appropriate because it is not based on the Master Services Agreement. (ECF No. 138 at 8 fn. 1.) Pieper replies that it "is not moving for summary judgment on Count III of WSOR's Third-Party Complaint to the extent the Count seeks equitable indemnity based on common law negligence." (ECF No. 142 at 9 fn. 3.) Based on this statement (and the fact

9

that Pieper did not develop any argument with respect to the equitable indemnification claim in its initial brief), the court regards Pieper as having abandoned its request for summary judgment with respect to the railroad's equitable indemnification claim. Therefore, this aspect of Pieper's motion will be denied.

### 4. Conclusion

Pieper is entitled to summary judgment in its favor as to the railroad's contractual indemnity (ECF No. 24, ¶¶ 42-47) and breach of contract claims (ECF No. 24, ¶¶ 53-59). The undisputed facts demonstrate that the Master Service Agreement, which forms the basis for these claims, terminated long before Pieper performed the work that the railroad, in its complaint, alleges was done negligently. The work that Pieper performed following the termination of the agreement did not incorporate the terms of the agreement, and Pieper is not estopped from now arguing that the agreement terminated.

**IT IS THEREFORE ORDERED** that Pieper Electric Inc.'s motion for partial summary judgment on Wisconsin & Southern Railroad LLC's third-party complaint (ECF No. 126) is **granted in part**. It is granted with respect to the railroad's contractual indemnity (ECF No. 24, ¶¶ 42-47) and breach of contract claims (ECF No. 24, ¶¶ 53-59).

The motion is denied with respect to the railroad's equitable indemnity claim (ECF No. 24, ¶¶ 48-52).

Dated at Milwaukee, Wisconsin this 6th day of May, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge